IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALISHA S. RIDLEY | ) |
| | ) |
| **Plaintiff,** | ) CIVIL ACTION NO. _____ |
| | ) |
| v. | ) |
| | ) |
| JRK RESIDENTIAL GROUP d/b/a | ) |
| JRK PROPERTY HOLDINGS | ) **Jury Demand** |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

For this Complaint against Defendant JRK Residential Group ("JRK" or "Defendant"), Plaintiff Alisha S. Ridley ("Plaintiff") states:

### PARTIES

1. Plaintiff is a citizen and resident of Davidson County, Tennessee, and a former employee of Defendant.

2. JRK is a real estate and/or residential property management and holding company. JRK's principal office is located at 11766 Wilshire Blvd., Floor 15, Los Angeles, California 90025. JRK is duly licensed and actively conducting business in the State of Tennessee. Defendant is therefore subject to personal jurisdiction for the purpose of this lawsuit in Tennessee.

### JURISDICTION AND VENUE

3. This action is brought to remedy violations on the basis of race in the terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), including retaliation.

1

4. This action is also brought pursuant to the Fair Labor Standards Act ("FLSA") found at 29 U.S.C. § 201, et. seq., to remedy violations of the wage provisions of the FLSA by Defendant which deprived Plaintiff of lawful wages. Defendant violated the overtime, minimum wage, and/or record keeping provisions of the FLSA.

5. This action is also brought to remedy violations by Defendant of the Family and Medical Leave Act of 1993 ("FMLA") for its unlawful actions, including interference.

6. This action is also brought to remedy violations of for breach of contract under Tennessee law.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367 and this Court's pendant jurisdiction to redress the violations of state law. The unlawful employment practices alleged below were committed within the State of Tennessee, accordingly, venue is properly in this Court pursuant to 28 U.S.C. § 1391(b). This Court has jurisdiction over the subject matter and the parties. Venue is proper in this Court.

8. At all times material to this action, Plaintiff was an "employee" of Defendant as defined by § 203(e)(1) of the FLSA, and worked for Defendant within the territory of the United States within three years preceding the filing of the instant suit.

9. The minimum wage, overtime and record keeping provisions set forth in §§206, 207 and 211, respectively, of the FLSA apply to Defendant, and the Plaintiff was covered by the FLSA while employed by Defendant.

10. At all times material to this action Defendant was engaged in commerce.

11. Plaintiff worked hours while employed by Defendant for which she either received no compensation, for which she was improperly paid at rates less than one-and-one half

times their normal hourly rates, and/or for which they were paid below the minimum wage.

12. Defendant's actions, as set forth more fully below, in failing to compensate Plaintiff or keep records in accordance with the provisions of the FLSA were willful.

13. Plaintiff, whose race is black, is a member of a protected class within the scope of the Title VII and is afforded protection against race discrimination. Defendant discriminated against Plaintiff because of her race in violation of Title VII and on the basis of her race.

14. Defendant's conduct has harmed and caused damage to Plaintiff.

15. Defendant acted, and failed to act, intentionally and with malice or with reckless indifference to Plaintiff's rights.

16. Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought.

**FACTS**

17. Plaintiff adopts verbatim paragraphs 1-16 as though fully set herein.

18. Plaintiff was hired by Defendant on or about March 2009.

19. During her years of employment with Defendant, Plaintiff worked as a Property Manager, Leasing Agent, and Leasing Agent/Assistant Manager.

20. Plaintiff has nearly a decade of experience in the field of property management. She has been consistently recognized by her employers for the quality of her job performance and dedication.

21. Plaintiff's employment with Defendant ended via constructive discharge in May 2011, due to Defendant's creation of an intolerable work environment for Plaintiff (for the actions described herein).

3

22. Defendant's business involves the management of residential properties throughout the United States.

23. During Plaintiff's employment with Defendant, she was promoted from Leasing Agent to Property Manager. Plaintiff was the property manager for Defendant's Spring Hill property, which was not a highly performing property at the time of her promotion.

24. During Plaintiff's employment with Defendant, the territorial region that contains Plaintiff's former worksite(s) was staffed by approximately ten (10) Property Managers.

25. Plaintiff is African-American (Black). During Plaintiff's tenure as a Property Manager, she was the only property manager in the region that was black.

26. Throughout Plaintiff's tenure as a Property Manager, she was paid significantly less than white property managers for substantially similar job duties.

27. Plaintiff was often praised for her work performance and dedication as a Property Manager. Plaintiff improved the Spring Hill property during her tenure as a Property Manager. In fact, Plaintiff's dedication to meet Defendant's performance expectations was acknowledged by Defendant in late-August 2011.

28. Nevertheless, around October 2011, Plaintiff was demoted from Property Manager of the Spring Hill property to Leasing Agent/Assistant Manager of Defendant's Terrace Park property. Plaintiff was told that she was being reassigned as the Assistant Manager of Defendant's Terrace Park property (but Plaintiff was colloquially referred to as a Leasing Agent while at Terrace Park). Plaintiff's demotion came with a substantial reduction in pay.

29. Other territories (all managed by white property managers) were performing more poorly than Plaintiff's property at the time of her demotion; nevertheless, Plaintiff was selected

for demotion (and given a pay reduction) instead of a lesser performing white property manager.

30. Plaintiff's Spring Hill property was not the lowest performing territory in the region at the time she was demoted and given a pay reduction.

31. Plaintiff was replaced at the Spring Hill property by a white property manager with a history of poor performance. The white female that replaced Plaintiff was paid more than Plaintiff by Defendant for management of the same Spring Hill property. Plaintiff expressed her dissatisfaction with the demotion and believes her race motivated Defendant's decision to demote her and reduce her pay. Plaintiff is aware of other black employees that claim to have experienced racial discrimination at the hands of agents of Defendant.

32. Following her demotion, Plaintiff worked as an Assistant Manager/Leasing Agent at the Terrace Park property under the direction of a white female that earned substantially more money than Plaintiff did as a Property Manager. The white property manager at the Terrace Park property was a poorly performing member of management that placed excessive job responsibilities upon Plaintiff that were more in line with the duties and responsibilities of a property manager. Plaintiff was often held responsible performing the duties of a property manager at Terrace Park while receiving lesser compensation due to the demotion.

33. Plaintiff's job duties as an Assistant Manager/Leasing Agent were substantially similar to her former job duties as a Property Manager. However, her pay and title was inferior.

5

34. In 2012, following the termination of the property manager at the Terrace Park property, Plaintiff was not given a promotion to the position of Property Manager at the Terrace Park property, despite Plaintiff's interest in the job and work-related experience.

35. During an incident involving the alleged misconduct of another African-American employee, JRK Vice-President Lance Okada suggested that Plaintiff was involved in the alleged misconduct, simply due to the fact that both employees are black.

36. Plaintiff was issued several reprimands following Defendant's perusing of Plaintiff's email folders and discovery that Plaintiff was saving a multitude of documents detailing the unfair treatment that she was receiving from Defendant. The content of Plaintiff's email folders was shared with Vice-President Lance Okada, and Plaintiff heard Mr. Okada tell another member of management, "[s]he's going to f---ing sue us" during a telephone conversation. Subsequently, Plaintiff was falsely accused of poor performance or misfeasance on multiple occasions; including, but not limited to, being unjustly issued "Employee Counseling & Disciplinary Actions" (write-ups) in March and April 2012.

37. On or about April 25, 2012, Plaintiff was transported from work by ambulance due to severe chest pains, headaches, nausea, and a variety of other symptoms. Treating doctors diagnosed that her conditions were induced by work-related stress. Plaintiff was not informed of her eligibility for FMLA leave following the April 25, 2012 incident.

38. On April 30, 2012, Plaintiff delivered an email to Defendant's Human Resources Administrator (Maryl Dakin) inquiring about Defendant's FMLA policy. Defendant's FMLA policy was not included in its Employee Handbook at the time. On April 30, 2012, Plaintiff had approximately seventy (70) hours of paid personal time off (PTO)

available. In a telephone conversation, Ms. Dakin discouraged Plaintiff from taking FMLA leave by telling her the inaccurate statement that all time used pursuant to the FMLA would be "unpaid." However, Plaintiff's paid-PTO could have been used concurrently with FMLA leave to supplement her income while out for her serious medical condition(s). Ms. Dakin did not relay complete and accurate information to Plaintiff.

39. Ms. Dakin's statements to Plaintiff discouraged and interfered with Plaintiff's election to use her FMLA entitlement. In fact, on May 9, 2012, Plaintiff delivered Ms. Dakin an email stating, "I decided that I wasn't going to take the FMLA leave because it would not benefit me or my family because it is an unpaid leave and that would cause me more stress within itself." Plaintiff has limited financial resources (largely due to the improper demotion), and is a wife and mother of three children. Dakin did not respond to Plaintiff's email or explain the options available for Plaintiff to receive compensation while on leave for her serious health condition(s).

40. Plaintiff was promised by Defendant that she would receive a $25.00 commission/bonus each time she secured a residential lease. During her employment, Plaintiff secured a multitude of residential leases. Nevertheless, Plaintiff was rarely (if ever) given commission/bonus payments. Plaintiff estimates several thousands of dollars in deprived commission payments. JRK's breach of Plaintiff's terms and conditions of employment substantially deprived her of earned and promised compensation.

41. As a Property Manager, Leasing Agent, and Assistant Manager/Leasing Agent, Plaintiff would often work between 120-140 hours per pay period; was discouraged from claiming

worked overtime compensation; denied promised commissions; never given adequate support or staff; and frequently have to travel for work without travel reimbursement.

42. As a result of Defendant's conduct, Plaintiff has lost income and other privileges and benefits of employment, has suffered embarrassment, humiliation, stress and anxiety, inconvenience, and loss of enjoyment of life, and has incurred attorney's fees and expenses.

## FIRST CAUSE OF ACTION – TITLE VII

43. Plaintiff adopts verbatim paragraphs 1- 42 as though fully set out herein.

44. Plaintiff sues Defendant under Title VII for discrimination and harassment on the basis of race, including retaliation. Plaintiff sues Defendant for all remedies available under the Title VII, as well as any other legal and equitable relief that may be available.

45. Defendant has discriminated against Plaintiff in the compensation, terms, conditions, or privileges of her employment on the basis of his race in violation of Title VII, and has otherwise deprived or tended to deprive Plaintiff of employment opportunities or otherwise adversely affected the status of Plaintiff.

46. Defendant's acts or failure to act caused an intolerable, discriminatory, hostile, and abusive work environment for Plaintiff because of her race, which ultimately compelled her to resign in May 2011.

47. Plaintiff is now suffering and will continue to suffer irreparable injury, monetary damages and damages for mental anguish and humiliation as a result of Defendant's discriminatory practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION – FMLA VIOLATIONS

48. Plaintiff adopts verbatim paragraphs 1- 47 as though fully set out herein.

49. Based on the conduct described in this Complaint, Defendant is liable for unlawful interference with Plaintiff's entitled rights pursuant to the FMLA.

50. Defendant's conduct harmed and caused damage to Plaintiff.

51. The above actions described constitute unlawful FMLA interference, which led to her constructive discharge from employment in May 2012

## THIRD CAUSE OF ACTION – FLSA

52. Plaintiff adopts verbatim paragraphs 1-51 as though fully set out herein.

53. Plaintiff has at the request of Defendant, worked several hundred hours "off the clock" without compensation. In each workweek in which Plaintiff worked "off the clock" without compensation, Plaintiff either had already recorded in excess of 40 hours or would have recorded in excess of 40 hours if all hours worked by Plaintiff would have been recorded as required by the FLSA. As a result, Plaintiff has worked in excess of the hourly levels specified in the FLSA, 29 U.S.C. § 207 without overtime compensation. As a result, at all times material herein, plaintiff has been entitled to overtime compensation at a rate of not less than one and one-half times her regular rate of pay for the hours of overtime she has worked.

54. 29 U.S.C. § 207(a)(1) provides that employees shall be paid overtime compensation at a rate of not less than one and one-half times their regular rate of pay for hours worked in excess of 40 hours per work week. Defendant has failed to pay Plaintiff for several hundred hours of overtime compensation at one and one half her regular rate.

55. Defendant was aware of and accepted the benefit of the work Plaintiff performed without compensation. The defendant's violations of the FLSA as alleged herein have been done in a willful and bad faith manner.

56. Plaintiff requests compensation for her unlawfully denied wages, an equal amount as liquidated damages and all costs and attorneys' fees incurred in pursuing this action.

## FOURTH CAUSE OF ACTION - BREACH

57. Plaintiff adopts verbatim paragraphs 1-56 as though fully set out herein.

58. Based on the conduct described in this Complaint, Defendant is liable for its violation of breach of contract under Tennessee Law (for deprivation of promised commissions).

59. Defendant's conduct harmed and caused damage to Plaintiff.

60. The above actions described constitute violations of Tennessee law for breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that:

1. Process issue against the Defendant, requiring it to answer within the time period specified by applicable law;

2. With respect to Plaintiff's claims of discrimination (retaliation), Plaintiff prays that the Court enter a judgment:

    a. Declaring that the acts and practices complained of herein are in violation of Title VII;

    b. Enjoining and permanently restraining these violations of Title VII;

    c. Directing Defendant to take affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

    d. Directing Defendant to place Plaintiff in the position that she would have occupied but for Defendant's discriminatory and retaliatory treatment of her, and make her whole for all earnings she would have received but for Defendant's unlawful treatment, including, but not limited to, wages, pension, and other lost benefits;

e. Awarding Plaintiff compensatory damages and punitive damages in amounts to be determined by the jury;

   f. Awarding Plaintiff the costs of this action together with reasonable attorneys' fees, as provided by Title VII;

   g. Directing the Defendant to pay Plaintiff compensatory damages and damages for his mental anguish and humiliation; and

   h. Granting such other and further relief as this Court deems necessary and proper.

3. With respect to Plaintiff's claims under the FMLA and breach, Plaintiff prays for the Court to enter a judgment:

   a. That a trial by jury be had on all triable issues;

   b. Judgment in favor of Plaintiff and against Defendant on all Counts in this action;

   c. Declaratory judgment that the practices complained of are unlawful and void;

   d. Back pay and benefits to Plaintiff;

   e. Front pay (future lost pay and benefits);

   f. Compensatory damages pursuant to Tennessee common law claims;

   g. Liquidated damages pursuant to all counts and statutory claims;

   h. Attorneys' fees and expenses to Plaintiff;

   i. Prejudgment interest and, if applicable, post-judgment interest; and

   j. Such other and further legal or equitable relief to which Plaintiff may be entitled.

4. With respect to Plaintiff's claims under the FLSA, Plaintiff prays the Court enter a judgment:

   a. Enter a declaratory judgment declaring that the defendant has willfully and wrongfully violated their statutory and legal obligations and deprived plaintiff her rights, privileges, protections, compensation, benefits, and entitlements under the law, as alleged herein;

b. Order a complete and accurate accounting of all the compensation to which Plaintiff is entitled;

c. Award Plaintiff damages in the form of back pay compensation and benefits; unpaid entitlements; liquidated damages under federal law equal to her unpaid compensation; plus pre-judgment and post-judgment interest;

d. Award Plaintiff her attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and,

e. Grant such other legal and equitable relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial in this action.

Respectfully submitted,

**Brian C. Winfrey**
Attorney for Plaintiff
Green Hills Office Park
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
(615) 601-1276
brian@thewinfreyfirm.com